UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

LEONARDO SANTANA,                               :

                Petitioner,[1]     :     **MEMORANDUM DECISION**

       - v -                                  :     17-CV-5860 (DC)

N/A WARDEN,                                     :

                Respondent.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

APPEARANCES:        LEONARDO SANTANA
                          Petitioner *Pro Se*
                          c/o Virgen Rodriguez
                          91-12 Jamaica Avenue
                          Jamaica, NY  11421

                          LETITIA JAMES, Esq.
                          Attorney General of the State of New York
                          By:   Priscilla Steward, Esq.
                               Assistant Attorney General
                          28 Liberty Street, 14th Floor
                          New York, NY  10005
                              Attorney for Respondent

CHIN, Circuit Judge:

          In 2013, following a jury trial, petitioner Leonardo Santana was convicted of first-degree assault in the Supreme Court of the State of New York, Queens County

---

[1]     The Clerk of the Court is directed to amend the caption to refer to petitioner by his correct name, Leonardo Santana, as reflected in the petition.

(Blumenfeld, J.).  He was sentenced to five years' imprisonment and two-and-a-half years of post-release supervision.  Dkt. 1 at 1; Dkt. 9-1 at 3.  His conviction was affirmed by the Appellate Division, Second Department, *People v. Santana,* 44 N.Y.S.3d 915 (2d Dep't 2017) ("*Santana I*"), and the New York Court of Appeals denied his application for leave to appeal, *People v. Santana,* 86 N.E.3d 263 (N.Y. 2017) ("*Santana II*") (DiFiore, Ch. J.).

Santana was released from prison on July 19, 2017.[2]  On September 29 2017, proceeding *pro se*, Guerrero filed this habeas petition (the "Petition").  Dkt. 1 at 1.  The New York Attorney General's Office, representing Respondent, filed its opposition to the Petition on February 9, 2018.  Dkt. 9, 9-1.  Santana filed a reply on March 5, 2018.  Dkt. 11.  The case was reassigned to the undersigned on February 3, 2023.

For the reasons that follow, the Petition is DENIED.

### STATEMENT OF THE CASE

A.  *The Facts*[3]

The evidence at trial established the following:  On August 18, 2011, when he was seventeen years old, *see* Dkt. 10 at 7, Santana was involved in an altercation near

---

[2]   *See* Dkt. Sheet at 1; NYS Dep't of Corr. & Cmty. Supervision, *Incarcerated Lookup,* available at https://nysdoccslookup.doccs.ny.gov.
[3]   The facts are drawn principally from the response to the Petition, which sets forth the facts in detail with citations to the state court record, including the trial transcript.  *See* Dkt. 9, 9-1, 10.  Citations to the state court record, Dkt. 10, are to the continuous pagination at the bottom of each page.

2

Franklin K. Lane High School in Queens, *see id.* at 8. He was walking with five or six others when they encountered Akil Francis and three companions. *Id.* Three days earlier, Santana and Francis had had an argument in the school cafeteria that almost escalated into a fight; Santana threatened Francis and yelled slurs at him, and Francis threw food at Santana. Dkt. 9-1 at 2-3.

Santana separated himself from his friends and approached the other group. Santana bumped Francis with his shoulder and then punched Francis in the face. Francis ran across the street with Santana (and his friends) close behind. Across the street, Francis saw and grabbed a wooden broom stick. Santana took a fighting stance and approached Francis, with fists raised. Francis then struck Santana twice with the stick. *Id.* at 3.

A female approached Santana with an open book bag; Santana reached in and retrieved an object, a metal object the size of a pen. Santana then lunged at Francis and stabbed him with the object. Francis dropped the broomstick. Santana then grabbed Francis by the back of his neck and struck him repeatedly with his right hand. Francis pushed Santana off and ran across the street into a parking lot, bleeding from the left side of his body and having difficulty breathing. He went into a supermarket seeking help. Two of his friends followed and applied pressure to Francis's wound as he coughed up blood and blacked out. *Id.* at 4-5.

An emergency medical technician (the "EMT") responded and found Francis bleeding from what appeared to be a puncture wound in the chest. He cut away Francis's shirt and saw several small, round puncture wounds in Francis's abdomen, under his armpit, and close to his lung. Francis was taken to a hospital, where he was treated for a collapsed lung and stab wounds to his abdomen, chest, back, and armpit. Surgery was eventually performed to repair the collapsed lung. *Id.* at 4-6. He spent two days in the hospital, and, after being discharged, could no longer participate in sports and had frequent blackouts due to decreased lung capacity. *Id.* at 6 (citing Francis's testimony at trial).

A police officer reporting to the scene arrested two of Santana's friends. Santana was arrested a short time later in his home. *Id.* at 5.

B.   *Procedural History*

1.   *State Court Proceedings*

Santana was indicted in 2012 in Queens County for attempted murder in the second degree (N.Y. Penal Law §§ 110, 125.25(1)), assault in the first degree (N.Y. Penal Law § 120.10(1)), and two counts of assault in the second degree (N.Y. Penal Law § 120.05(1), (2)). Dkt. 10 at 39. The two second-degree assault charges were dismissed by the People before trial. *Id.* at 39 & n.1.

Trial commenced on April 10, 2013. Francis and three of his companions testified for the People. Dkt. 9-1 at 2-4. The EMT who administered aid at the scene

4

and the doctor who later performed the surgery both testified to the extent of Francis's wounds, and Francis's medical records were admitted into evidence. *Id*. at 4-6.

Santana presented a substantial defense case, taking the stand himself and calling several other witnesses. Santana testified that: Francis was the instigator because Francis punched him first and then hit him with a stick; two of Francis's companions also were punching him; he was afraid for his life; one of Francis's companions pulled out and dropped a knife; Santana picked up the knife and stabbed Francis, repeatedly, to stop Francis and his friends from continuing to attack him. Santana testified he then ran home. He had a bruise on his left arm where Francis had hit him with the stick. *Id*. at 6-9.

Santana was acquitted of second-degree attempted murder and convicted of first-degree assault. Dkt. 10 at 39.

At sentencing, defense counsel requested that Santana be adjudicated as a youthful offender and asked for a sentence of six months' imprisonment and five years' probation or, alternatively, a one-year term of incarceration with youthful offender treatment. The People opposed. *Id*. at 50. The trial court reviewed the factors relevant to the issue, including Santana's age and family circumstances and the seriousness of the crime. The court observed that "[t]he jury convicted him of stabbing someone three times. He had the option after initiating this, seeing the complainant go across the street to get a weapon, to take another route home." Dkt. 10-2 at 454. Instead of

5

behaving like a seventeen-year old high school student, the court observed, Santana stabbed Francis three times and concluded that "the sharp object of stabbing someone three times . . . requires punishment as an adult." *Id.* at 453-54. The court denied youthful offender treatment. The court noted that the crime carried up to twenty-five years in prison, but in light of Santana's age, the court sentenced Santana to the minimum of five years' imprisonment as well as two-and-a-half years of post-release supervision. *Id.* at 455.

Represented by counsel, Santana appealed to the Appellate Division, Second Department. He raised two claims: (1) there was insufficient evidence to support the assault conviction because the People failed to prove that (a) he was unjustified in stabbing Francis and (b) Francis suffered serious physical injury as required for a first-degree assault conviction, and (2) the trial court erred in refusing to grant him youthful offender treatment. *See* Dkt. 10 at 3, 37.

By decision dated January 25, 2017, the Appellate Division affirmed the conviction. *See Santana I*, 44 N.Y.S.3d at 915-16. The court held that the evidence was "legally sufficient to disprove the defense of justification beyond a reasonable doubt." *Id.* at 915. It also held that the evidence was sufficient to support the jury's finding that Francis had sustained a serious physical injury. *Id.* The court wrote that upon reviewing the record, "we are satisfied that the verdict of guilt was not against the

6

weight of the evidence." *Id.* at 915-16 (citation omitted). Finally, as to the trial court's refusal to grant Santana youthful offender status, the Appellate Division concluded:

> Under the circumstances of this case, including the serious nature of the crime, the Supreme Court did not improvidently exercise its discretion in denying the defendant youthful offender treatment, and we decline to disturb that determination.

*Id.* at 916 (citations omitted).

Santana applied for leave to appeal to the New York Court of Appeals, raising the claims he had raised in the Appellate Division. Dkt. 10 at 80-99. The Court of Appeals denied leave. *Santana II*, 86 N.E.3d at 263.

### 2. *Proceedings in This Court*

Santana filed his Petition *pro se*, asserting three claims.[4] He first contends that his conviction "involved an unreasonable application of[] clearly established Federal law, as determined by the Supreme Court of the United States . . . . no reasonable juror could agree on state court decision." Dkt. 1 at 5-6. He does not identify

---

[4] Santana filed the Petition on September 29, 2017, after he had completed his term of imprisonment. *See* Docket Sheet at 1. The petition was timely, as it was filed within one year of the Court of Appeals' denial of leave to appeal. *See* 28 U.S.C. § 2241(d)(1). Although it appears that Santana has now also completed his two-and-a-half year term of post-release supervision, the petition is not moot to the extent it challenges his conviction because the conviction may carry collateral consequences, including, for example, immigration consequences. *See United States v. Mercurris*, 192 F.3d 290, 293 (2d Cir. 1999); *United States v. Probber*, 170 F.3d 345, 348 (2d Cir. 1999); *Johnson v. Thompson*, No. 20-CV-0836, 2022 WL 3099228 (N.D.N.Y. Aug. 4, 2022). To the extent the petition challenges the sentence, however, the petition is moot. *See, e.g., McCormick v. Annucci*, No. 17-CV-0948, 2020 WL 1935608, at *4 (N.D.N.Y. Apr. 22, 2020) (dismissing as moot petitioner's habeas claim challenging only the calculation of his sentence).

any Supreme Court decision, nor does he elaborate on or explain the basis for this claim. *Id*. Second, he asserts, again without explanation or elaboration, that his conviction "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." *Id*. at 7-8. As to his third claim, Santana writes: "There is an absence of available state corrective process to deal with youthful offender status; and circumstances exist in N.Y. that render 'Y.O.' status discretionary process 'ineffective' to protect my rights. All states, except N.Y., have changed Y.O. rules." *Id*. at 8-9.

The Attorney General's Office filed a response to the Petition in February 2018. Dkt. 9, 9-1. In his *pro se* reply, filed March 5, 2018, Santana addressed what he perceived to be inadequacies in the New York's process for determining youthful offender status, without further discussion of his sufficiency claims. *See* Dkt. 11.

## DISCUSSION

I. *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

8

28 U.S.C. § 2254(d); *see Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017); *Harrington v. Richter*, 562 U.S. 86, 97-98 (2011). Hence, when a claim is adjudicated on the merits, the state court's decision must be accorded "substantial deference." *Fischer v. Smith*, 780 F.3d 556, 560 (2d Cir. 2015). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520, 524 (2012).

When considering a sufficiency argument on habeas review, "[a] federal court must look to state law to determine the elements of the crime." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (citation omitted). A federal court "must consider whether, as a matter of federal law, there was sufficient evidence for a jury to find that the prosecution proved the substantive elements of the crime as defined by state law." *Einaugler v. Sup. Ct. of N.Y.*, 109 F.3d 836, 839 (2d Cir. 1997) (citations omitted). The reviewing court "must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor." *Fama*, 235 F.2d at 811 (citation omitted). A "petitioner bears a very heavy burden in convincing a federal *habeas* court to grant a petition on the grounds of insufficiency of the evidence." *Id.* (citation omitted). Indeed, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was

9

'objectively unreasonable.'" *Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam)).

II.  *Analysis*

Santana's Petition does not clearly identify the grounds on which he is challenging his conviction. I liberally construe his Petition, *see Johnson v. Fogg*, 653 F.2d 750, 753 (2d Cir. 1981), to assert the two grounds he raised on direct appeal: (1) sufficiency of the evidence and (2) the trial court's refusal to grant him youthful offender status. While Santana also argues that in New York there is insufficient "available state corrective process to deal with youthful offender status," that is not a matter that can be raised in a habeas petition other than to the extent it relates to his conviction or sentence in this case. *See Boudin v. Thomas*, 732 F.2d 1107, 1114 (2d Cir. 1984) (distinguishing habeas petitions meant to "vindicate[e] individual rights based on the Constitution" from other civil actions undertaken to "refin[e] rules and policy"). I address the two claims that are properly before the Court.

A.  *The Sufficiency of the Evidence*

There are two parts to Santana's sufficiency claim: while he concedes that he intentionally stabbed Francis, he argues that the evidence was insufficient to (1) disprove his defense of justification and (2) prove that Francis suffered a serious physical injury. The Appellate Division rejected both arguments on the merits. *See*

*Santana I*, 44 N.Y.S.3d at 915-16.  Accordingly, the Appellate Division's decision must be accorded "substantial deference."  *Fischer*, 780 F.3d at 560.

The Appellate Division's rejection of the sufficiency argument was reasonable, in both respects.

First, under New York law, the use of deadly physical force is justified when a person reasonably believes that such force is necessary to defend himself from what he reasonably believes to be the use or imminent use of deadly physical force.  *See* N.Y. Penal Law § 35.15(1), (2).  The use of deadly physical force is not justified, however, if the defendant knows that he can with complete safety avoid the necessity of using force by retreating.  *See id.* § 35.15(2)(a); *People v. Goetz*, 497 N.E.2d 41, 47 (N.Y. 1986).  Moreover, "[e]ven if a defendant is justified in using deadly physical force at the beginning of a single, ongoing encounter with an assailant, his right to use that force terminates at the point where he can no longer reasonably believe that the assailant still poses a threat to him."  *People v. Del-Debbio*, 664 N.Y.S.2d 28, 28 (1st Dep't 1997).

Here, there was ample testimony contradicting Santana's claim that he stabbed Francis only to defend himself from the use of deadly force.  The People's witnesses testified that Santana initiated the confrontation by shoving and punching Francis and that Santana continued the confrontation by following Francis across the street.  The witnesses testified that after Francis picked up a broomstick, rather than disengage and retreat, Santana took a fighting stance and armed himself with a knife

11

provided by a friend.  They further testified that after Santana lunged at and stabbed Francis, Francis dropped the stick; again, instead of disengaging and retreating, Santana grabbed Francis and stabbed him repeatedly.  The medical evidence confirmed that Francis was stabbed repeatedly.  *See* Dkt. 9-1 at 2-6.  Even assuming Santana was justified in using deadly force when Francis wielded the broomstick, the jury could have reasonably found that once Santana stabbed Francis and saw Francis drop the stick, Santana could not have reasonably believed that Francis still posed a threat to him.  *See id.* at 14-15.

Santana and his witnesses told a different story.  *See id.* at 6-9.  But, as the Appellate Division held, the jury was entitled to believe the People's witnesses and reject the testimony of Santana and his witnesses.  *See Santana I*, 44 N.Y.S.3d at 915; *see also Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996) ("assessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal"); *Wheel v. Robinson*, 34 F.3d 60, 66 (2d Cir. 1994) ("A federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.") (quoting *Jackson v. Virginia*, 443 U.S. 307, 326 (1979)).  The Appellate Division's conclusion that the People disproved the justification defense is reasonable.

Second, the Penal Law defines a "serious physical injury" as "physical injury which creates a substantial risk of death, or which causes death or serious or protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any bodily organ." N.Y. Penal Law § 10.00(10).

The record here contains substantial evidence that Francis suffered a serious physical injury. He was stabbed multiple times, in the abdomen, armpit, and close to his lung. The medical evidence established that he suffered a collapsed lung that required surgery to repair. "Courts in New York have held that proof of a collapsed lung is sufficient to prove 'serious physical injury' so as to sustain a first degree assault conviction." *Brown v. Graham*, No. 10-CV-6281, 2011 WL 3476526, at *5 (W.D.N.Y. Aug. 9, 2011) (citing *People v. Thompson*, 639 N.Y.S.2d 52, 53 (2d Dep't 1996); *People v. Wright*, 482 N.Y.S.2d 591, 592 (4th Dep't 1984)); *see In re Justin G.*, 961 N.Y.S.2d 714, 715 (4th Dep't 2013).

Francis also testified that he suffered from diminished lung capacity after his surgery and that, as a result of this condition, he experienced blackouts and was unable to engage in physical activities he previously had enjoyed. Dkt. 9-1 at 5-6. This testimony was sufficient to establish that Francis suffered a protracted impairment of health or the function of a bodily organ. *See, e.g., People v. Moreno*, 650 N.Y.S.2d 306, 306 (2d Dep't 1996); *People v. Braxton*, 593 N.Y.S.2d 55, 56 (2d Dep't 1993). The Appellate

Division's conclusion that the People proved Francis sustained a serious physical injury is reasonable.

Accordingly, Santana's sufficiency of the evidence claim fails.

B.     *The Youthful Offender Determination*

Santana's claim that the trial court erred in refusing to accord him youthful offender treatment is not a basis for habeas relief.

First, as noted above, to the extent Santana is challenging his sentence by contending he should have received a lower sentence as a youthful offender, the claim is moot because he has completed both his term of imprisonment and his post-release supervision. *See supra* n.4. Second, to the extent the claim is not moot, it fails on the merits.

Under New York law, the decision whether to grant a defendant youthful offender treatment is a discretionary one, and the sentencing court has wide discretion in this respect. *See United States ex rel. Frasier v. Casscles*, 531 F.2d 645, 647 (2d Cir. 1976) (citations omitted); *People v. Victor J.*, 724 N.Y.S.2d 162, 163 (1st Dep't 2001). Moreover, a defendant does not have a constitutional right to youthful offender treatment. *See Auyeung v. David*, No. 00-CV-1353 (GEL), 2000 WL 1877036, at *3 (S.D.N.Y. Dec. 26, 2000) ("it is well established that the United States Constitution grants no independent due process right either to youthful offender treatment or to any particular procedure for denying it").

14

Here, the Appellate Division addressed the claim on the merits, concluding that the trial court "did not improvidently exercise its discretion in denying the defendant youthful offender treatment." *Santana I*, 44 N.Y.S.3d at 916. That decision is entitled to deference.

The trial court's decision not to grant Santana youthful offender treatment was, as the Appellate Division concluded, reasonable. As the jury found, Santana initiated the encounter, escalated what could have been a high-school fracas into a deadly encounter, stabbed Francis, and then, instead of disengaging and walking away, stabbed him again and again. Moreover, while the trial court decided to treat Santana as an adult, the court took his youth into account, sentencing him to the minimum prison term possible. *See* Dkt. 10-2 at 435-55; N.Y. Penal Law § 70.02(3)(a). The trial court's decision was fairminded and reasonable.

This claim fails as well.

## CONCLUSION

Santana has failed to show a basis for relief under 28 U.S.C. § 2254. Accordingly, his Petition is denied. Additionally, I decline to issue a certificate of appealability because Santana has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253. Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this case. The Clerk shall also mail copies of this memorandum decision and the judgment to Santana at his last known address.

SO ORDERED.

Dated:    New York, New York
         February 7, 2023

_____
DENNY CHIN
United States Circuit Judge
Sitting By Designation